UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **LITTLE JOHN MCCLOUD # 50540,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 3:24-cv-00920 |
| v. ) | |
| ) | |
| **f/n/u GARRISON,** *correctional officer*, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Little John McCloud, a pre-trial detainee in the custody of the Sumner County Jail, filed a pro se complaint against five correctional officers ("C/Os") and Nurse Mary, all alleged to be employees of the Sumner County Jail. (Doc. No. 1). Plaintiff asserts violations of his civil rights. Plaintiff also filed a "Motion to be Moved" from the Sumner County Jail to a different facility. (Doc. No. 11)

### I. FILING FEE

Plaintiff submitted an Application for Leave for Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2) and supporting documentation as required by statute (Doc. No. 7).

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). The Court finds that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay

1

the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the Sumner County Jail to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of

his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the PLRA.

A. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). Id. § 1915A(b).

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. Summary of Facts Alleged by Plaintiff

The allegations of the complaint are assumed true for purposes of the required PLRA screening.

On April 26, 2024, while in the custody of the Sumner County Jail, Plaintiff was walking "down the tier walkway" when C/O White yelled at Plaintiff to "get [his] fucking shirt on." (Doc. No. 1 at PageID# 1). Plaintiff asked why C/O White talked to Plaintiff in that manner. Plaintiff then was grabbed by C/Os Garrison and Smith and guided back to his cell. When Plaintiff refused, C/Os White and Smith pushed Plaintiff against the wall, pinning him with an arm against his throat. This caused Plaintiff to have difficulty breathing, so he pushed C/O Smith's arm away, which knocked C/O Smith's glasses off. Plaintiff then tried to return to his cell, but C/Os Garrison, White, and Smith "slammed [Plaintiff] to the ground" and "rolled onto [his] stomach." (Id. at PageID# 7). C/O Garrison then jammed his knee into Plaintiff's back "extremely hard, causing injury to [Plaintiff's] kidneys." (Id.) Plaintiff was then handcuffed and escorted to the elevator during which time C/O Garrison "continued to assault [Plaintiff], twisting the handcuffs, yanking [his] arms up behind [his] back and pushing [Plaintiff] against the wall in the elevator." Id. After Plaintiff was taken to the Special Housing Unit, C/O Garrison "walked [Plaintiff] to the back of the cell, made [Plaintiff] get on [his] knees and then he slammed his knee on [Plaintiff's] right leg causing extreme pain." (Id. at PageID# 8). C/Os Burgren and Walker were present and witnessed the assaults and failed to intervene.

A few minutes later, Plaintiff began urinating blood. Plaintiff sought assistance from Nurse Mary who told Plaintiff "there is nothing she c[ould] do" and told Plaintiff to fill out a sick call. Id. Another nurse later came, instructed Plaintiff to urinate in a cup, and then sent Plaintiff to the emergency room. Plaintiff was hospitalized for kidney failure.

C. Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and

laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

The complaint names six Defendants to this action: Nurse Mary and C/Os Garrison, Smith, Walker, White, and Burgren. All Defendants are sued in their individual and official capacities. (See Doc. No. 1 at PageID# 2-4). The complaint alleges excessive force claims against the C/Os and a deliberate indifference to serious medical needs claim against the nurse.

1. Excessive Force claims

From the complaint, it appears Plaintiff was a pretrial detainee at the time of the alleged use of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision.

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" Cordell v. McKinney, 759 F.3d 573, 580 (6th Cir. 2014) (quoting Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." Cordell, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth

Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" Id. (quoting Combs v. Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee—as opposed to a convicted prisoner—from the use of excessive force that amounts to punishment. See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. See id. "The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'" Coley v. Lucas Cnty., Ohio, 799 F.3d 530, 538-39 (6th Cir. 2015) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).

Here, the Fourteenth Amendment analysis applies because Plaintiff is a pretrial detainee. Based on the allegations in the complaint, the Court finds that Plaintiff states colorable Fourteenth Amendment excessive force claims under Section 1983 against C/Os Garrison, White, and Smith in their individual capacities. These allegations warrant further factual development.

The complaint alleges that C/Os Burgren and Walker witnessed the alleged assaults by C/Os Garrison, White, and Smith and could have intervened, but failed to do so. "Liability can arise from inaction. Indeed, 'there are circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force.'" See Austin v. Ashcraft, No. 1:22-cv-159, 2023 WL 6217096, at *5 (S.D. Ohio Sept. 25, 2023) (quoting Turner v. Scott,

119 F.3d 425, 429 (6th Cir. 1997) (citations omitted)). An officer is liable for failure to prevent excessive force "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted). This law applies to corrections officers. See Batson v. Hoover, 788 F. App'x 1017, 1021-22 (6th Cir. 2019); McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir. 1990) ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating.").

Crediting Plaintiff's version of events, C/Os Burgren and Walker were present in the hallway, elevator, and/or cell when C/Os Garrison, White, and Smith assaulted Plaintiff individually or collectively. C/Os Burgren and Walker would have known that, during some of that time, Plaintiff was handcuffed and thus unable to protect himself. It is not unreasonable to conclude that the assaults—which occurred in at least three different locations—lasted long enough for C/Os Burgren and White to have had the opportunity and means to prevent the assaults and ensuring injuries from occurring or continuing. See id. at *5 (citing Cf. Burgess v. Fischer, 735 F.3d 462, 475-76 (6th Cir. 2013) (finding facts insufficient to show opportunity and means to prevent harm where plaintiffs themselves "d[id] not contend that the takedown lasted any more than ten seconds"); Kowolonek v. Moore, 463 F. App'x 531, 539 (6th Cir. 2012) (no opportunity and means where instance of excessive force included only single use of taser); Ontha v. Rutherford Cty., Tenn., 222 F. App'x 498, 506 (6th Cir. 2007) (no opportunity and means where instance of excessive force lasted six to seven seconds)). Thus, the Court concludes that the complaint states colorable excessive force claims based on their failure to intervene against C/Os Burgren and Walker in their individual capacities. These claims, too, will proceed.

7

Finally, the complaint alleges excessive force claims against all officers in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993). Here, the officers are alleged to be employees of Sumner County, Tennessee (see Doc. No. 1 at PageID# 2-3).

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by Sumner County or its agent. Monell Dep't of Social Svcs., 436 U.S. 658, 690-691 (1978). In short, for Sumner County to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. 658, 693); Regets v. City of Plymouth, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting Slusher v. Carson, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

Here, the complaint does not contain allegations of an illegal policy or custom of Sumner County. However, the Court declines to dismiss Plaintiff's official claims at this time.

2. Medical Care claims

Next, the Court considers Plaintiff's claim that Nurse Mary did not provide Plaintiff with appropriate and timely medical care for the injuries he sustained during the attacks by corrections officers. The Eighth Amendment's prohibition against cruel and unusual punishment requires

prison officials to provide humane conditions of confinement, which includes appropriate medical care to inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (citations omitted). The Due Process Clause of the Fourteenth Amendment incorporates these protections for pretrial detainees such as Plaintiff. Winkler, 893 F.3d 877, 890. An Eighth Amendment claim is composed of two parts: an objective prong, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective prong, which requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. Farmer, 511 U.S. 825, 834, 837. Deliberate indifference is "a high standard of culpability, 'equivalent to criminal recklessness.'" Greene v. Crawford Cnty., Michigan, 22 F.4th 593, 605 (6th Cir. 2022) (quoting Griffith v. Franklin Cnty., Kentucky, 975 F.3d 554, 566 (6th Cir. 2020)).

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" Greene, 22 F.4th 593 at 605 (6th Cir. 2022) (quoting Brawner v. Scott Cnty., Tenn., 14 F.4th 585, 591 (6th Cir. 2021) (citation omitted). But in Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Supreme Court held that the standard for excessive force claims brought by pretrial detainees under the Due Process Clause of the Fourteenth Amendment differs from the standard for excessive force claims brought by convicted prisoners under the Cruel and Unusual Punishments Clause of the Eighth Amendment. Id. at 391-92. The Court held that, to prove the second prong of an excessive force claim, a pretrial detainee must show that "the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable." Id. at 391-92 (italics in original).

Kingsley left open the question of "whether an objective standard applies in other Fourteenth Amendment pretrial detainment context[s]." Brawner, 14 F.4th at 592. Finding that it

9

was "no longer tenable" after Kingsley to apply the same analysis to the "constitutionally different groups" of convicted prisoners and pretrial detainees, the Sixth Circuit in "Brawner modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness[.]" Id. at 592, 596. Thus, under Brawner, to prove a deliberate indifference to serious medical needs claim under the Fourteenth Amendment, "'[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard.'" Brawner, 14 F.4th at 597 (6th Cir. 2021) (quoting Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). He or she must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. (citation and quotation marks omitted). Subsequently, the Sixth Circuit decided Trozzi v. Lake Cnty., 29 F.4th 745 (6th Cir. 2022), which articulated the modified standard as follows:

> [A] plaintiff must satisfy three elements: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

Id. at 757. The Court pointed out that this standard still "ensur[es] that there is a sufficiently culpable mental state to satisfy the [ ]high bar[ ] for constitutional torts grounded in a substantive due process violation." Id. at 758. A showing of "mere negligence is insufficient." Id. at 753 (citing Brawner, 14 F.4th at 596).

Here, the complaint alleges that Plaintiff informed Nurse Mary that Plaintiff was urinating blood and was in extreme pain. Even so, the complaint alleges, Nurse Mary told Plaintiff there was nothing she could do other than have him to complete a form for sick call. Because the complaint alleges that after another nurse was notified of Plaintiff's predicament,

10

she took a urine sample from Plaintiff and immediately sent him to the hospital, Nurse Mary's claim that there was nothing she could do could lead a reasonable jury to conclude that she acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Brawner, 14 F.4th at 597. The Court finds that this claim should proceed for further development.

The complaint also alleges an official capacity claim against Nurse Mary. While the complaint alleges that Nurse Mary is a member of the medical staff of the Sumner County Jail and thus an employee of Sumner County, in the Court's experience the medical staff of local jails are often employees of an entity that contracts with the county to provide medical care to the county's jail inmates. See Montgomery v. Wellpath Med., No. 3:19-cv-00675, 2020 WL 636581, at *4 (M.D. Tenn. Feb. 10, 2020) (permitting a Section 1983 claim to proceed against Wellpath Medical as a state actor) (citing Starcher v. Corr. Med. Sys., Inc., 7 F. App'x 459, 465 (6th Cir. 2001) (finding that corporate provider of medical services to jail inmates is "clearly a state actor" under § 1983 and, like the county that operates the jail, can only be liable for harm directly caused by the execution of its policy)).

The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. Thomas v. Coble, 55 F. App'x at 748, 748-49 (6th Cir. 2003); Street v. Corr. Corp. of Am., 102 F.3d 810, 817-18 (6th Cir. 1996). Under these standards, the private corporations doing so cannot be held liable under a theory of respondeat superior. See Braswell v. Corr. Corp. of Am., 419 F. App'x 622, 627 (6th Cir. 2011) (finding Corizon Health and Corizon Services, providers of inmate health services, "cannot be held liable under a theory of respondeat superior."). Instead, to prevail on a Section 1983 claim against private corporations providing medical care to inmates, a

11

plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. Id.

Here, the complaint does not allege that Plaintiff suffered any injury because of an unconstitutional policy or custom of the entity that provides medical care to Sumner County Jail inmates. However, just as the Court declines to dismiss Plaintiff's official capacity claims against Sumner County at this time, the Court declines to dismiss Plaintiff's official capacity claims against Nurse Mary in her official capacity at this time.

## IV. MOTION TO BE MOVED

On May 12, 2025, Plaintiff filed a "Motion to be Moved" in which asks to be transferred to a different facility because he fears for his safety and well-being. (Doc. No. 11). He states that C/Os Walker, Garrison, and White "still work around" Plaintiff, and he does not feel safe. (Id. at PageID# 61). He states that, on May 12, 2025, C/O Walker "came to [Plaintiff's] cell door in 1-C-201 and banged on [Plaintiff's] door loudly m[a]ny times just to wake [Plaintiff] up" and Plaintiff perceived the action to be retaliatory. (Id.)

Federal Rule of Civil Procedure 11(a) requires that "every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Plaintiff failed to sign the motion, so the Court cannot consider it. The motion (Doc. No. 11) is therefore **DENIED**.

Even though the Court cannot consider the motion as a request to transfer Plaintiff to another facility, the Court considers the allegations made therein in combination with the allegations of the complaint and determines that Plaintiff's allegations warrant the appointment of counsel. Accordingly, the Court **DIRECTS** the Clerk of Court to appoint counsel for Plaintiff

from the civil appointment panel. The Court finds that the interests of justice necessitate such appointment.

## V. CONCLUSION AND REFERRAL

The Court has conducted the required PLRA screening of the complaint and finds that Plaintiff states colorable (1) excessive force claims against C/Os Garrison, Smith, White, Walker, and Bergram in their individual capacities and (2) a deliberate indifference to medical needs claim against Nurse Mary in her individual capacity, all under Section 1983.

Plaintiff's official capacity claims are subject to dismissal, but the Court declines to dismiss them at this time as Plaintiff's appointed counsel may desire to amend the complaint as to these and other claims.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is advised that process cannot be served upon any Defendant until the full name of the individual involved in the alleged incident has been determined.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE